# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MAXIM DOLGOSHEEV,        )
                                      )

      Plaintiff,             )
                                      )

      v.                   )      Civil Action No. 07-1019
                                      )

UNITED STATES CITIZENSHIP    )      Hon. Nora Barry Fischer
AND IMMIGRATION SERVICES,    )      U.S. District Judge
                                      )

      Defendant.          )

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Maxim Dolgosheev (hereinafter, "Plaintiff"), a citizen of the Ukraine, brought this action under the Declaratory Judgment Act, 28 U.S.C. § 1361 and the Administrative Procedure Act ("APA"), 5 U.S.C. 551, *et seq*., against the United States Citizenship and Immigration Service (hereinafter, "USCIS" or "Defendant") seeking to compel Defendant to grant his Application for Naturalization. Presently before the Court is Defendant's Motion for Summary Judgment. For the following reasons, Defendant's Motion [11] is GRANTED.

## II.    PROCEDURAL HISTORY

On July 20, 2007, Plaintiff filed his Complaint seeking judicial review of the USCIS' denial of naturalization. (Docket No. 1). Defendant filed a Motion for Summary Judgment and Brief in Support on January 28, 2008. (Docket Nos. 11-13). Thereafter, Plaintiff's Response and Brief in Support of Plaintiff's Response were filed on February 15, 2008. (Docket Nos. 20 and 21). Subsequently, Defendant filed a Reply Brief on March 4, 2008. (Docket No. 24). On March 17, 2008, Plaintiff filed a Sur-Reply Brief regarding Defendant's Motion for Summary Judgment

(Docket No. 27). On May 13, 2008, the Court conducted a hearing and heard argument on Defendant's Motion for Summary Judgment. Defendant offered its uncontested Oral Argument Exhibit (Exhibit 1).[1] (Docket No. 28). Plaintiff did not appear. (Docket No. 28). During said hearing, the Court ordered counsel for the parties to submit additional briefing to address the application, if any, of a recent case from the United States Court of Appeals for the Third Circuit, *Manoj Nijhawan v. Attorney General of the United States*, 523 F.3d 387 (3d Cir. 2008). (Docket No. 28). Thereafter, Defendant filed its brief addressing *Nijhawan* on May 27, 2008. (Docket No.29). In turn, Plaintiff filed a Brief in Opposition, which included a supplement regarding the good moral character of the Plaintiff, on June 18, 2008. (Docket No. 30). Subsequently, Plaintiff filed exhibits in support of said brief on June 19, 2008. (Docket Nos. 31-33). On June 23, 2008, Defendant filed its objections to *Plaintiff's Post-Hearing Evidentiary Submissions*. (Docket No. 34). Despite said objections, on July 11, 2008, Plaintiff filed additional exhibits numbered 4 and 5 in Support of his Brief in Opposition.[2] (Docket Nos. 37 and 38). Accordingly, this matter was fully briefed as of July 11, 2008.

## III.  JURISDICTION AND STANDARD OF REVIEW

Pursuant to 8 U.S.C. § 1421(c), the Court has jurisdiction to conduct a *de novo* review of

---

[1]

Exhibit 1 consists of immigration and criminal statutes pertinent to Plaintiff's convictions, declarations of FBI Supervisory Special Agent Eric Strom and USCIS Supervisory Adjudication Officer John A. Meehan, and Plaintiff's Criminal Plea Colloquy and Plea Agreement. (Defendant's Exhibit 1 Admitted into Evidence at Hearing on May 13, 2008).

[2]

Exhibit 4 is a letter from Plaintiff's former employer attesting to Plaintiff's good moral character. (Docket No. 37). Exhibit 5 is a letter from Plaintiff's probation officer concerning his adjustment to supervision. (Docket No. 38). Specifically, Plaintiff has been cooperative and compliant with his conditions of supervision, has had periods of unemployment, and has submitted restitution payment most months. (Docket No. 38).

Plaintiff's naturalization denial and shall make its own findings of fact and conclusions of law.

Section 1421(c) provides:

> a person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). "In a naturalization proceeding, the individual who is seeking to obtain the rights and privileges of United States citizenship bears the burden to prove by a preponderance of the evidence that he or she is eligible to become a United States citizen." *Gilkes v. Ridge*, No. 03-1417, 2008 WL 545033, at *2 (M.D. Pa. Feb. 25, 2008) (citing *Berenyi v. District Director*, 385 U.S. 630, 637 (1967) ("[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect")). All doubts as to eligibility for citizenship are to be resolved in favor of the government and against the individual seeking citizenship. *Berenyi*, 385 U.S. at 637.

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

In evaluating the evidence, the Court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. "The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment." *Turner v. Leavitt*, No. 05-942, 2008 WL 828033, at *4 (W.D. Pa. March 25, 2008) (citing *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10 WRIGHT AND MILLER, FEDERAL PRACTICE § 2721 at 40 (2d ed. 1983))); *Pollack v. City of Newark*, 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957), *cert. denied*, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers

4

to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV.    FINDINGS OF FACT

The Court makes the following findings of fact as required by 8 U.S.C. § 1421(c) and Federal Rule of Civil Procedure 52(a):

Plaintiff is a 26 year old native and citizen of the Ukraine. (Docket No. 13, at ¶ 1). Pursuant to a non-immigrant visa, he entered the United States on July 22, 1995 at Buffalo, New York. (Docket No. 13, at ¶ 2). On October 28, 1997, Plaintiff adjusted his status to that of lawful permanent resident and was issued a permanent resident card. (Docket No. 13, at ¶ 3). Since 1997, Plaintiff has lived with his parents, both United States citizens, in Pittsburgh, Pennsylvania. (Docket No. 1, at ¶ 4).

On December 17, 2002, Plaintiff filed an Application for Naturalization (Form N-400) with the USCIS after attaining five years as a permanent resident. *Id.* In accordance with standard procedure, after Plaintiff filed said application, John Meehan, the USCIS adjudication officer in charge of Plaintiff's naturalization application, conducted a search of the USCIS criminal database the night before Plaintiff's scheduled interview. (Defendant's Exhibit 1 Admitted into Evidence at Hearing on May 13, 2008, Tab 4, at ¶ 3). According to Mr. Meehan's uncontested declaration:

> upon searching the criminal database, I discovered that an Interagency Border Inspection System (IBIS) alert was posted for Mr. Dolgosheev and that his Form G-325 Name Check was still pending with the FBI. In accordance with standard operating procedures, I immediately contacted the listed point of contact in the IBIS alert, which was a U.S. Customs Intelligence Officer with the U.S. Customs Intellectual Property Rights Coordination Center in Washington, D.C. I spoke

with a Customs Agent who indicated that Mr. Dolgosheev was the subject of a criminal software counterfeiting investigation that was still ongoing. This agent advised me that I should only proceed with the naturalization interview for Mr. Dolgosheev with the knowledge that he was the subject of an ongoing criminal investigation. I also reviewed the Form G-325 Name Check database. I noted that Dolgosheev's name was still pending for national security and criminal background clearance with the FBI. In accordance with our standard agency procedures, I annotated Mr. Dolgosheev's file to show that the Form G-325 Name Check was pending with the FBI. As mandated by agency policy, a "pending" Form G-325 Name Check from the FBI means that the naturalization case cannot be adjudicated to completion by an USCIS officer until the issue underlying the "pending status" has been resolved and a final response has been posted by the FBI.

(Defendant's Exhibit 1 Admitted into Evidence at Hearing on May 13, 2008, Tab 4, at ¶ 4).

After receiving said information concerning Plaintiff, Mr. Meehan conducted a naturalization interview of Plaintiff on July 28, 2003. (Docket No. 24, at 4). Mr. Meehan's declaration states:

at this interview, Mr. Dolgosheev and I went over his naturalization application line by line. At the beginning of the interview, Mr. Dolgosheev took a verbal oath attesting that all statements he provided during the interview would be true. Upon conclusion of the interview, Mr. Dolgosheev signed a written oath affirming that all the statements in his naturalization application were true. At the conclusion of the interview, I gave Mr. Dolgosheev, a "Naturalization Interview Results" Form (Form N-652) stating that '[A] decision cannot yet be made about your application.' I then placed Mr. Dolgosheev's file in our Form G-325 Name Checks Pending cabinet, which is reviewed and updated on a weekly basis according to any developments that are received in a particular case. At that time, USCIS could not approve Mr. Dolgosheev's application due to both the pending FBI name check and the pending criminal investigation into his counterfeiting activity. I am statutorily prohibited from approving naturalization applications where the applicant's good moral character is at issue.

(Defendant's Exhibit 1 Admitted into Evidence at Hearing on May 13, 2008, Tab 4, at ¶ 5).

Although Plaintiff completed all prerequisites for naturalization, a final decision on his

application was withheld until the completion of Form G-325 Name Check and the criminal investigation. (Docket No. 13, at ¶ 4).

Plaintiff had been under investigation since 2003 by the Pittsburgh, Pennsylvania Office of the Federal Bureau of Investigation ("FBI") for activity that led to his convictions for trademark counterfeiting and copyright infringement. (Docket No. 4-3, at 6 and Docket No. 24, at 4). Eric Strom, a Supervisory Special Agent with the FBI and the lead investigator in the criminal case against Plaintiff, offered an uncontested declaration based on his participation in the counterfeiting investigation and prosecution of Plaintiff. (Docket No. 28; Defendant's Exhibit No. 1 Admitted into Evidence at Hearing on May 13, 2008, Tab 3, at ¶¶ 1, 2). Strom's declaration states that Plaintiff came to the attention of the FBI sometime in 2000, when Microsoft informed the FBI of its belief that Plaintiff was a participant in a scheme unlawfully distributing Microsoft software for profit over the internet. (Defendant's Exhibit No. 1 Admitted into Evidence at Hearing on May 13, 2008, Tab 3, at ¶ 3). Further, Strom's declaration also offers the following facts:

> on or about July 17, 2001, I executed a search warrant at the home of Mr. Dolgosheev. The search disclosed numerous pieces of counterfeit Microsoft software and various business records containing fraudulent invoices and other documents related to the counterfeiting scheme. Mr. Dolgosheev was present during the execution of the search warrant. At this time, Mr. Dolgosheev admitted to the selling of counterfeit Microsoft software. Prior to executing the search warrant, we had knowledge that Mr. Dolgosheev was not a United States citizen and that his criminal conviction could result in adverse immigration consequences. Accordingly, we coordinat[ed] with the Immigration and Naturalization Service prior to the execution of the search warrant and made them aware of our criminal investigation. The ensuing investigation revealed that Mr. Dolgosheev knowingly participated in a criminal trademark counterfeiting scheme whereby he purchased counterfeit Microsoft software that contained bogus serial numbers, packaging, and trademarks bearing the Microsoft logo. Mr. Dolgosheev would then place these items for sale on the internet and

> advertis[e] the product as genuine Microsoft software being sold at discount prices. [The] criminal scheme resulted in approximately 1.5 million dollars in sales. The total loss to Microsoft was estimated at 8-10 million dollars."

(Defendant's Exhibit No. 1 Admitted into Evidence at Hearing on May 13, 2008, Tab 3, at ¶¶ 4-6).

Following conviction, on April 15, 2005, Plaintiff pled guilty in the United States District Court for the Western District of Pennsylvania to the following four criminal counts: conspiracy to engage in trademark counterfeiting in violation of 18 U.S.C. § 371; trafficking in counterfeit goods and services in violation of 18 U.S.C. § 2320; and two counts of copyright infringement in violation of 17 U.S.C. § 506(a)(1) and 18 U.S.C. § 2319(b)(1). *See United States v. Dolgosheev*, Criminal No. 05-91, Docket No. 15 (W.D. Pa. Jan. 10, 2006).

These convictions were the result of Plaintiff's involvement in the criminal software counterfeiting scheme described in detail by Agent Strom. (Docket No. 14-2, at ¶ 3). This criminal activity operated under the auspices of Inominatus, Inc. (Docket No. 1, at ¶ 3). The counterfeit software included copies of Microsoft Office 2000 Professional and Microsoft Windows NT Server, which were sold and delivered to various individuals from approximately June of 1998 to July of 2001. (Docket No. 1, at ¶ 9; Docket No. 14-2 at ¶¶ 1, 4).

On December 15, 2005, Plaintiff was sentenced to a term of probation of five years and ordered to make restitution to Microsoft Inc. in the amount of $265,000. (Docket No. 14-2, at 20, 21). Payment was to be made in installments. (Docket No. 14-2, at 21). On April 11, 2006, Plaintiff satisfied the judgment. (Docket No. 14-2, at 22). Plaintiff continues to serve his sentence of probation, which will end on December 15, 2010.

On September 6, 2006, the USCIS issued a decision denying Plaintiff's Application for

Naturalization. (Docket No. 14-3, at 8). The USCIS held that Plaintiff was ineligible for naturalization because he failed to meet the requirement of "good moral character" as required under 8 C.F.R. § 316.10 and 8 U.S.C. § 1427(a). (Docket No. 14-3, at 8). In making this determination, the USCIS explicitly held "since you committed and were found guilty of an aggravated felony, this Service cannot find you are a person of good moral character. Therefore, your naturalization application is denied." (Docket No. 14-3, at 9).

Thereafter, on October 5, 2006, Plaintiff requested an administrative hearing and review of the denial of his naturalization application. (Docket No. 14-3, at 24). The District Director of the USCIS's Pennsylvania Service Center affirmed the denial of Plaintiff's application in a decision on March 23, 2007. (Docket No. 14-3, at 24-27). Citing 8 C.F.R. § 316.10(2)(c)(1), the USCIS decision held that "since you are currently on probation, even if you were not convicted of an aggravated felony, the Service would still be prohibited from approving you application." (Docket No. 14-3, at 26).

On May 23, 2007, the USCIS issued a Notice to Appear to Plaintiff that placed him in removal proceedings from the United States given his aggravated felony convictions. (Docket No. 13, at ¶ 13). On March 3, 2008, Plaintiff and his attorney of record, Ms. Valerie May, were served with the Notice to Appear. (Docket No. 24, at 3-4 and Docket No. 24-2, at 2-5). Said Notice to Appear was also sent to the Immigration Court for filing on March 4, 2008. *Id.* Accordingly, Plaintiff has an immigration court date of August 13, 2008 at 1:00 p.m. for his removal hearing. *Id.*

V. **OVERVIEW OF PENDING MOTION AND RESPONSE**

Defendant has moved for summary judgment on three grounds: (1) Plaintiff's convictions constitute aggravated felonies under the Immigration and Nationality Act ("INA"), thus precluding

him from establishing the good moral character requirement necessary for naturalization and hence, the denial of Plaintiff's Application for Naturalization was based on a correct interpretation of the law by the USCIS, (Docket No. 12, at 1); (2) Plaintiff is statutorily barred from naturalization because he is currently in removal proceedings, (Docket No 12, at 10); (3) and, 8 C.F.R. § 316.10(c)(1) bars the USCIS from granting the Plaintiff's Application for Naturalization because he is currently on probation, (Docket No. 12, at 10).

In response, Plaintiff maintains that summary judgment is not proper for the following reasons: (1) Plaintiff has not committed an aggravated felony within the meaning of 8 U.S.C. § 1101(43)(a), (Docket No. 21, at 1); (2) Plaintiff has not been properly served as required by 8 C.F.R. § 3.14(a), and is therefore not in removal proceedings, (Docket No. 21, at 1); (3) "[Plaintiff] should not be denied citizenship because of his convictions or his probation because, but for the agency's unreasonable and unlawful delay, [his] application would have been adjudicated before any convictions or probation were on his record." (Docket No. 21, at 9).

Defendant counters that Plaintiff's argument pertaining to the delay in processing his application is without merit since the delay can be attributed to what was then a pending investigation of the activities surrounding his eventual criminal conviction. Moreover, Plaintiff is required to maintain good moral character for a period of time that does not end until he takes the oath of allegiance and becomes a United States citizen. (Docket No. 24, at 4).

## VI. APPLICABLE LAW AND CONCLUSIONS OF LAW

### A. Requirements for Naturalization

The Attorney General has the sole authority to naturalize persons as citizens of the United States. *See* 8 U.S.C. § 1421(a). In order to be eligible for naturalization as a United States citizen,

a lawful permanent resident alien must (1) reside continuously in the United States for five years after being lawfully admitted for permanent residence; (2) reside continuously in the United States from the date of the filing of an application to the time of admission as a citizen; and (3) demonstrate good moral character. 8 U.S.C. § 1427(a).

"The statutory period for which good moral character is required begins five years prior to filing the application for naturalization, and continues until the applicant take[s] the oath and becomes a United States citizen." *United States v. Epkin*, 214 F. Supp. 2d 707, 712 (S.D. Tex. 2002) (citing 8 U.S.C. § 1427(a)(3) and 8 C.F.R. § 316.10(a)(1)). There is no precise definition of what constitutes "good moral character." *Application of Murra*, 178 F.2d 670 (7th Cir. 1949). However, an alien convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43) is statutorily not a person of "good moral character" and is therefore precluded from obtaining citizenship through naturalization. 8 U.S.C. § 1101(f)(8).

The parties do not dispute that Plaintiff is a permanent resident alien who has resided continuously in the United States for a period of five years and has remained a continuous resident pending his application for naturalization. Therefore, the only issue before the Court is whether Plaintiff has demonstrated good moral character within 8 U.S.C. § 1427(a) during a period beginning five years prior to his filing an application for naturalization and ending with his completion of his oath to become a United States citizen, which has yet to occur.

"An applicant who has been on probation, parole, or suspended sentence during all or part of the statutory period is not thereby precluded from establishing good moral character, but such probation, parole or suspended sentence may be considered by the Service in determining good moral character." 8 C.F.R. § 316.10(c)(1). Moreover, courts have considered an unexpired probationary term

as a factor in determining whether an alien had good moral character in an action to revoke and set aside an order for of naturalization and to cancel a certificate of naturalization. *United States v. Kiang*, 175 F. Supp. 2d 942 (E.D. Mich. 2001). Accordingly, this Court can consider Plaintiff's probationary sentence in determining whether he has demonstrated good moral character.

## B.      Aggravated Felony Under 8 U.S.C. §1101(a)(43)(M)(i)

As stated above, it is undisputed that Plaintiff pled guilty and was convicted of the following offenses: conspiracy to engage in trademark counterfeiting in violation of 18 U.S.C. § 371; trafficking in counterfeit goods and services in violation of 18 U.S.C. § 2320; and two counts of copyright infringement in violation of 17 U.S.C. § 506(a)(1) and 18 U.S.C. § 2319(b)(1). *See United States v. Dolgosheev*, Criminal No. 05-91, Docket No. 15 (W.D. Pa. Jan 10. 2006). Based upon these convictions, USCIS denied Plaintiff's Application for Naturalization finding that Plaintiff was ineligible because said convictions constituted aggravated felonies, and hence, Plaintiff was not a person of good moral character. (Docket No. 14-3, at 9).

Accordingly, this Court must determine whether Plaintiff's convictions were properly deemed aggravated felonies. The term "aggravated felony" means an offense that "involves fraud or deceit in which loss to the victim or victims exceeds $10,000..." 8 U.S.C. § 1101(a)(43)(M)(I).[3]

---

[3]

The Court notes that Plaintiff submitted an abundance of exhibits attesting to his good moral character, namely his personal statement (Docket No. 30-2 at 2-3), various statements and letters from family and friends in his support (Docket No. 30-2 at 4-12; Docket No. 37), a transcript of his sentencing (Docket Nos. 31 and 32), and information concerning the political and social situation in the Ukraine (Docket No. 34). Although the Court reviewed said submissions, the Court finds that the issue of Plaintiff's good moral character, specifically whether Plaintiff has committed an "aggravated felony" for purposes of removal, is purely a legal question, and therefore, such exhibits are not relevant to the Court's resolution of the instant matter. *See* 8 U.S.C. § 1101(a)(43)(G); *see also Martinez-Perez v. Gonzales*, 417 F.3d 1022 (9th Cir. 2005).

## 1.    Did the offense involve fraud or deceit?

Defendant contends that Plaintiff's conviction for trafficking in counterfeit goods involves an element of "deceit." (Docket No.12, at 7- 8).  In response, Plaintiff argues that his conviction for trademark counterfeiting under 18 U.S.C. § 2320(a) does not involve elements of "fraud or deceit" as required by 8 U.S.C. § 1101(a)(43)(M)(i) or a one-year prison term as required by 8 U.S.C. § 1101(a)(43)(R).[4]  Therefore, he contends he was not convicted of an aggravated felony and cannot be placed into removal proceedings. (Docket No. 21, at 1).

The term "deceit" is not defined in 8 U.S.C. § 1101(a)(43)(M)(i).  It is commonly understood that where a statute does not explicitly define a term, that term is normally construed in accord with its ordinary meaning.  *Smith v. U.S.*, 508 U.S. 223, 228 (1993). Black's Law Dictionary defines "deceit" as, "[t]he act of intentionally giving a false impression or a false statement of fact made by a person knowingly."  Black's Law Dictionary, (8th ed. 2004).

The United States Court of Appeals for the Third Circuit addressed the meaning of "deceit" in *Valansi v. Ashcroft.* 278 F.3d 203 (3d Cir. 2002).[5]  In *Valansi*, petitioner Elanith Valansi, an illegal alien, was convicted of embezzling more than $400,000 in cash and checks from her employer, pursuant to 18 U.S.C. § 656.  *Id.* at 205.  The Board of Immigration Appeals ("BIA") for the

---

[4]    The Court notes that Defendant does not argue conviction of an aggravated felony under § 1101(a)(43)(R) as it is undisputed that there is no prison time involved here. (Docket Nos. 13 and 22, at ¶ 8). Therefore, this Court declines to address the application of said provision.

[5]    Because Defendant does not rely on *Bobb v. U.S.,* 458 F.3d 213 (2006) nor did USCIS in its decision of September 6, 2006, and Plaintiff contends *Bobb* is not on point, the Court will not address *Bobb* in its analysis. (Docket Nos. 12 and 24, at 2, Docket No. 21, at 2).

Immigration and Naturalization Service ("INS") classified the conviction as an aggravated felony under the INA and ordered petitioner's removal to Israel. *Id.* Because the term "deceit" is not defined by the Subsection (M)(i), the Court turned to the common definition found in Black's Law (noted above) and Webster's Third New International Dictionaries.[6] *Id.* at 209. Further, the Court defined "involves" as "[t]o have within or as part of itself" or "to require as a necessary accompaniment" though the elements of the offense need not be coextensive with the crime of fraud. *Id.* at 209, 210. The use of the word "involves" broadens the scope of 8 U.S.C. § 1101(a)(43)(M)(i) to include offenses that have at least one element of fraud or deceit. *Id.* at 210. Moreover, an offense which has as an element an intent to defraud or an intent to deceive "categorically qualifies as an offense involving fraud or deceit." *Conteh v. Gonzales*, 461 F.3d 45, 59 (1st Cir. 2006)

More recently, the same Third Circuit reaffirmed its holding in *Valansi* in *Nijhawan v. Attorney General*, 523 F.3d 387 (3d Cir. 2008). Interpreting § 1101(a)(43)(M)(i), the Court dispensed with Nijhawan's argument that the phrase "involves fraud or deceit" should be restricted to the common law meaning of those terms. *Id.* at 391. Rather, the Court held that the phrase should be broadly interpreted. *Id.* Quoting extensively from *Valansi*, the *Nijhawan* Court reaffirmed that "an offense that involves fraud or deceit is most naturally interpreted as an offense that includes fraud or deceit as a necessary component," though does not require the elements of the offense to be coextensive with fraud. *Id.* (quoting *Valansi*, 278 F.3d at 209, 210).

Further, in *Valansi*, because the criminal statute at issue was written in the disjunctive, as it

---

[6]

According to *Valansi*, Webster's Third New International Dictionary of the English Language defines "deceit" as "the act of intentionally giving a false impression" or "the act or process of deceiving . . .[as] to cause to believe the false." *Valansi* at 209.

is here, the Court looked to the specific facts beyond Valansi's conviction to determine if he was convicted with an intent to deceive or intent to injure. *Valansi,* 278 F.3d at 214. The Court did not limit its analysis to the charge as stated in the indictment, but instead examined the entire context of Valansi's conviction including the plea colloquy. *Id.* This Court finds *Valansi* instructive and follows its lead in reviewing the instant plea colloquy.

Here, Plaintiff pled guilty to Count Two, trademark counterfeiting in violation of 18 U.S.C. § 2320(a). 18 U.S.C. § 2320(a) is defined in part as "intentionally traffick[ing]...in goods or services and knowingly us[ing] a counterfeit mark." In order to obtain a conviction under § 2320(a), it must be shown beyond a reasonable doubt that: (1) the defendant trafficked or attempted to traffic in goods or services; (2) that he did so intentionally; (3) that the defendant used a counterfeit mark on or in connection with such goods and services; and (4) that he knew the mark was counterfeit. *U.S. v. Giles*, 213 F.3d 1247, 1249 (10th Cir. 2000). The statute defines a counterfeit mark as "a spurious mark" that "is likely to cause confusion, to cause mistake, or to deceive." 18 U.S.C. §2320(e)(1)(A)(iv). The statute fails to define the term "counterfeit." However, as stated above, where a statute does not explicitly define a term, that term is normally construed with its ordinary meaning. *Smith*, 508 U.S. at 228. A plain definition of "counterfeit" is "to unlawfully forge, copy, or imitate without a legal right to do so and with the purpose of deceiving or defrauding." Black's Law Dictionary, (8th ed. 2004). *See also Yong Wong Park v. Atty. Gen. of U.S.*, 472 F.3d 66 (3d Cir. 2006).

Considering the statutory meaning of "counterfeit mark" and the common meanings of "deceit" and "counterfeit," this Court finds that Plaintiff's conviction for trafficking in counterfeit goods and services pursuant to 18 U.S.C. § 2320(a) includes an element of "deceit" as the offense to which he pled guilty involved the use of "counterfeit marks." "Plaintiff participated in a criminal

trademark counterfeiting scheme, whereby he purchased counterfeit Microsoft software that contained

bogus serial numbers, packaging, and trademarks bearing the Microsoft logo.  [He] would then place

these items for sale on the internet and advertis[e] the product as genuine Microsoft software being

sold at discount prices."  (Defendant's Exhibit No.1 Admitted into Evidence at Hearing on May 13,

2008, Tab 3, at ¶¶ 4-6). [7]

At the hearing, Defendant noted that the charges to which Plaintiff pled guilty were

referenced as Exhibit 1 but its counsel did not specifically recite them. (Defendant's Exhibit No. 1

Admitted into Evidence at Hearing on May 13, 2008, Tab 5, at 21).  Turning to said charging

documents, the Court finds they contain the statutory definition of "counterfeit mark."  They also

contain the phrase "and to deceive." (Docket No. 14-2, at 7). Emphasis is placed on the "deceit"

element of the crime.  No objections were placed on the record by either Plaintiff or his counsel at

the change of plea. (Defendant's Exhibit No. 1 Admitted into Evidence at Hearing on May 13, 2008,

Tab 5, at 26).  Moreover, when asked if an accurate summary of the plea agreement had been

presented on the record, Plaintiff's counsel answered in the affirmative while Plaintiff expressed that

the summary was consistent with his understanding.[8]  *Id.*  As such, this Court finds that Plaintiff

specifically pled guilty to intentionally trafficking in goods and "knowingly using on or in connection

with such goods...a spurious mark identical to or indistinguishable from 'Microsoft'... the use of

which counterfeit mark is likely to cause confusion, to cause mistake, *and* to deceive." (Docket No.

---

[7] Considering the details of Plaintiff's counterfeiting scheme, although the elements of 18 U.S.C. § 2320 do not specifically include the term fraud or deceit, the Court agrees with the District Director of USCIS that the very nature of said crime is based on deceit. (*See* Docket No. 14-3 at 25).

[8] Plaintiff is an educated, very bright young man, as exhibited by his Carnegie Mellon college degree.  (Docket No. 30-2 at 4)

14-2, at 7). Considering the common definition of "counterfeit" (stated above) and the terms of the statute to which Plaintiff pled guilty, this Court finds that his crime involved "as a necessary component or element" the act of deceiving or defrauding.

Moreover, the fourth element of § 2320 is that the Defendant knew the mark was counterfeit. *Giles*, 213 F.3d at 1249. Plaintiff's guilty plea included his agreement that "he knew the mark used was counterfeit." (Defendant's Exhibit No. 1 Admitted into Evidence at hearing on May 13, 2008, Tab 5, at 16). Said admission is also supported by the uncontested declaration of Agent Strom, stating that Plaintiff knew the goods were counterfeit but sold them on the internet as genuine Microsoft products at discount prices. (Defendant's Exhibit No. 1 Admitted into Evidence at Hearing on May 13, 2008, Tab 3, at ¶ 6). Strom's declaration corroborates the charging documents and the Plaintiff's plea, adding support to the Court's finding that the offense to which Plaintiff pled guilty qualifies as an offense involving deceit. *See Gonzales*, 461 F.3d at 59 ("An offense with a scienter element of either intent to defraud or intent to deceive categorically qualified as an offense involving fraud or deceit.").

Plaintiff next argues that those who purchased the counterfeit product were not actually deceived, and therefore the crime lacks the requisite element of "deceit" to constitute an aggravated felony. (Docket No. 1, at ¶ 27, 28). In the alternative, Plaintiff argues that the "likely to ... deceive" language of 18 U.S.C. § 2320(a) cannot be read to meet the more definitive "involving" language of § 1101(a)(43)(M)(i). (Docket No. 30, at 10).

Plaintiff's first argument is easily addressed. The correct test for determining the meaning of "likely to deceive" in 18 U.S.C. § 2320(a) is whether the counterfeit mark is likely to cause deception

to the public in general. *U.S. v. Foote*, 413 F.3d 1240, 1246 (10th Cir. 2005). As long as Plaintiff's crimes were likely to deceive the general public, there need not be a showing of actual deceit among those who purchased the counterfeit software. *Id.* Accordingly, the Court finds Plaintiff's argument to be without merit.

As to Plaintiff's second argument, *Valansi* is again instructive. In reviewing the transcript of the change of plea hearing, the court found that defendant only pled guilty to intending to deprive the banks, which it equated with an intent to injure and not with an intent to defraud. *Valansi,* 278 F.3d at 217. Intent to injure alone does not meet the criterion for aggravated felony under 8 U.S.C. §1101(a)(43)(M)(i). *Id.* However, the court never foreclosed that defendant's crimes could satisfy both intent to deprive and  intent to defraud by which she would have been guilty of an aggravated felony under Subsection (M)(i). In fact, the Court held that an "intent to defraud" under 18 U.S.C. § 656 would constitute a crime "involving" fraud or deceit and thus an aggravated felony under Subsection (M)(i). *Id.* Guided by the Third Circuit's instruction to broadly interpret terms, *see Valansi*, 278 F.3d at 209-210; *Nijhawan*, 523 F.3d at 390,  this Court finds no merit in Plaintiff's argument that the term "likely" in § 2320(a) does not satisfy "involve" for the purposes of 8 U.S.C. § 1101(a)(43)(M)(i).

### 2.        Did the loss to victim exceed $10,000?

Plaintiff contends that this Court should not look at the amount of restitution paid to determine whether the requirement that monetary loss to the victim exceed $10,000 is met. (Docket No. 22, at 2). Even assuming the validity of Plaintiff's argument, the loss to the victim in this matter still meets the $10,000 threshold. Plaintiff pled guilty to selling at least 52 units of counterfeit software. (Docket

No. 14-2, at 5,6). Plaintiff admits that the retail value of one legitimate unit of Microsoft Software is $400. (Docket No. 1, at ¶ 27). Simple multiplication shows the loss to Microsoft far exceeds the $10,000 requirement of § 1101(a)(43)(M)(i).

### 3. Conclusion

Finally, this Court finds the discussion in *Yong* pertinent to counterfeiting akin to this Court's rationale. In *Yong*, the court determined that a conviction for one count of trafficking in counterfeit goods or services in violation of 18 U.S.C. § 2320 was properly deemed an aggravated felony. *Yong*, 472 F.3d at 73. In making this determination, the court noted that the plaintiff ignored the fact that "INS § 1101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R) does not define the term 'aggravated felony' as 'counterfeiting,' but rather as 'an offense relating to...counterfeiting.'" [9] *Yong*, 472 F.3d at 72. Further, the court considered the broad interpretation of the phrase "relating to" in the context of INA § 101(a)(43)(R), 8 U.S.C. § 1101 (a)(43)(R), the definition of "counterfeit mark" as defined in 18 U.S.C. § 2320, and the overall purpose of said statute. "It is clear, then by penalizing those who traffic in goods while knowingly using a counterfeit mark, 18 U.S.C. § 2320 is simply one of several federal criminal statutes which 'seeks to discourage [the act of] counterfeiting through the criminalization of the use of its end product." *Yong Wong Park*, 472 F.3d at 73 (citing *Albillo-Figueroa v. INS*, 221 F.3d 1070, 1073 (9th Cir. 2000)). As such, in this Court's estimation, the *Yong* court's analysis bolsters this Court's determination that Plaintiff's conviction for violation of 18 U.S.C. § 2320 should be deemed an aggravated felony

---

[9]    Although the Court recognizes that 8 U.S.C. § 1101(a)(43)(R) is not applicable to this case because Plaintiff was not sentenced to a prison term, the analysis as to counterfeit crimes in *Yong* is persuasive.

Accordingly, because Plaintiff's convictions under 18 U.S.C. § 2320(a) involve deceit as commonly defined and the loss to Microsoft exceeds $10,000, Plaintiff's crimes constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i).

## C.     Request for a Hearing and Unreasonable Delay

As stated above, Plaintiff maintains that "he should not be denied citizenship because of his convictions or his probation because, but for the agency's unreasonable and unlawful delay, [his] application would have been adjudicated before any convictions or probation were on his record." (Docket No. 21, at 9). Defendant counters that Plaintiff's argument pertaining to the delay of his application is without merit since the delay can be attributed to what was then a pending investigation of the activities surrounding his eventual criminal conviction. Moreover, Plaintiff is required to maintain good moral character for a period of time that does not end until he takes the oath and becomes a United States citizen. (Docket No. 24, at 4).

Applying for naturalization through the USCIS involves several steps.

> First, an applicant must submit an application for naturalization. 8 U.S.C. § 1445(a). Second, a USCIS employee conducts a personal investigation of the applicant. 8 U.S.C. § 1446(a). Third, the FBI conducts a criminal background check of the applicant. 8 C.F.R. § 335.2(b). Fourth, a USCIS employee conducts an examination, or interview, of the applicant. 8 U.S.C. § 1446(b); *El-Daour v. Chertoff,* 417 F.Supp.2d 679 (W.D.Pa. Aug.26, 2005) (finding that the "examination" refers to the interview of an applicant). Finally, there is a determination whether the application should be granted or denied. 8 U.S.C. § 1446(d). If the application is granted, the applicant participates in a citizenship oath ceremony. 8 U.S.C. § 1448(a); *Khan v. Frazier,* Civil No. 06-1560 (MJD/RLE), 2007 WL 270413, at *3 (D.Minn. Jan.29, 2007).

*Ahmed v. Muellar*, No. 07-0411, 2007 WL 2726250, at * 2 (E.D. Pa. Sept. 14, 2007).

In order to determine whether Plaintiff's application for naturalization should have been adjudicated prior to his criminal convictions, the court must consider 8 U.S.C. § 1447(b). § 1447(b) provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). The APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA also provides that reviewing courts shall "compel agency action unlawfully withheld or unreasonable delayed." 5 U.S.C. § 706(1). However, "it is essential for USCIS to make a fully-informed decision regarding any application for naturalization, and as a matter of law, USCIS cannot move forward on a naturalization application without first receiving confirmation from the FBI that a complete criminal background investigation has been completed." *Damra v. Chertoff*, No. 05-0929, 2006 WL 1786246, at *3 (N.D. Ohio Jun. 23, 2006); *See* 8 U.S.C. § 1446(a). Moreover, the Government may only be estopped from enforcing immigration law where a delay in processing an application for naturalization is shown to be the result of affirmative misconduct. *I.N.S. v. Miranda*, 459 U.S. 14, 17 (1982). The burden in proving such misconduct is not easily met, and proof that a naturalization application was not processed timely, without more, falls far short of establishing misconduct. *Id.* at 19; *Yang v. I.N.S.*, 574 F.2d 171, 175 (3d Cir. 1978).

Here, Plaintiff filed his application for Naturalization with USCIS on December 17, 2002 and was interviewed on July 28 2003. (Docket No. 1 at ¶ 4 and Docket No. 24, at 4). Plaintiff passed his English and history proficiency tests and completed all other prerequisites for naturalization, but a final decision on his application was withheld until the completion of background checks. (Docket No. 1 at ¶¶ 4, 7 and Docket No. 13, at ¶ 4). Since 2003, Plaintiff was under investigation by the FBI for activities that ultimately led to his convictions for trademark counterfeiting and copyright infringement. (Docket No. 14-3, at 6 and Docket No. 24, at 4). Plaintiff pled guilty, was convicted for said criminal activity on April 15, 2005, and was sentenced to a term of probation of five years on December 15, 2005. (Docket No. 14-3, at 6). Further, the criminal activity to which Plaintiff pled guilty stemmed from events that occurred from June 1998 to July 2001. (Docket No. 14-2, at ¶ 1).

As noted, Plaintiff's interview and/or examination was conducted on July 28, 2003. Therefore, according to 8 U.S.C. § 1447(b), as Plaintiff's application for naturalization was not adjudicated in 120 days from said interview, he had the opportunity to apply to a United States District Court for a hearing on this matter. 8 U.S.C. § 1447(b). However, Plaintiff failed to request a hearing from this Court at that time.[10] (Moreover, his current complaint does not request a hearing.)[11] Further, due to

---

[10]

This Court notes that at this point, Plaintiff's application for naturalization has been fully adjudicated. The USCIS issued a decision denying Plaintiff's application for naturalization on September 6, 2006. (Docket No. 14-3, at 8). Thereafter, on October 5, 2006, Plaintiff requested an administrative hearing and review of said denial, which was affirmed in a decision issued on March 23, 2007. (Docket No. 14-3, at 24-27).

[11]

Plaintiff requests the following relief from this Court in his Complaint: (1) Assume jurisdiction of this cause.; (2) Declare that the USCIS' denial of the Plaintiff's Application for Naturalization was premised on an error in their statutory interpretation and therefore they mislabeled the Plaintiff as an aggravated felon when the statute does not support this assertion.; (3) Compel the Defendant and its officers to perform their duty to grant Plaintiff's Application for Naturalization upon finding that all statutory eligibility requirements have been fully satisfied by the

the pending FBI investigation that was being conducted, it would have been improper for USCIS to move forward with his application. An alien must meet all statutory requirements before naturalization may be conferred. *U.S. v. Ginsberg*, 243 U.S. 472, 475 (1917). Because the pending criminal investigation cast doubt on whether Plaintiff would meet this requirement, his application was properly delayed. The criminal activity that Plaintiff was engaged in stemmed from 1998 until 2001, well within the five year statutory period prior to the filing of his application in which the applicant must demonstrate good moral character. 8 U.S.C. § 1427(a)(3). This Court finds no affirmative misconduct by USCIS in not processing Plaintiff's application for naturalization prior to his criminal convictions.

### C.     Probation as an Impediment to Naturalization

Pursuant to  8 U.S.C. § 1103(a)(1), the Secretary of the Department of Homeland Security is charged with the administration and enforcement of all laws related to immigration and naturalization of aliens and is granted the power to establish such regulations. To that end, the Department of Homeland Security has established the type of evidence and other factors to be considered when determining if an applicant has demonstrated good moral character.  Here, the Court finds instructive regulation 8 C.F.R. § 316.10(c)(1) which provides that "an application will not be approved until after the probation, parole, or suspended sentence has been completed." 8 U.S.C. § 316.10(c)(1).

Further, in the USCIS March 23, 2007 decision denying Plaintiff's request for a hearing, the District Director cited section 316.10(c)(1) stating that "[s]ince [Plaintiff] is currently on probation, even if [he] were not convicted of an aggravated felony, the Service would still be prohibited from

---

Plaintiff.; and (4) Grant such other relief as this Court deems proper under the circumstances. (Docket No. 1 at 10).

approving [his] application." (Docket. No. 14-3, at 26). This Court must defer to the USCIS's construction of its own regulation unless the regulation is contrary to Congressional intent or undermines the purposes of the statute(s) to which it relates. *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984). Moreover, district courts have determined that section 316.10(c)(1) does not contravene Congressional intent or undermine the purposes of the INA, specifically as to the issue of good moral character. *See Jiminez v. Eddy,* 153 F. Supp. 2d 1105, 1107 (D.Alaska 2001) (finding that "[t]he regulation, [Section 316.10(c)(1)] was promulgated in accordance with established rulemaking procedures."); *Kiang*, 175 F. Supp. 2d 942 (revoking defendant's naturalization because it was granted while he was on probation, in violation of the strictures of § 316.10 (c)(1)).[12]

On December 15, 2005, Plaintiff was sentenced to five (5) years of probation which he is currently serving. (Docket No. 14-2, at 19-20). Accordingly, this Court finds the USCIS acted in conformity with its regulation when it held that Plaintiff could not be naturalized while still on probation as articulated by 8 C.F.R. § 316.10 (c)(1).

### E.      Mandamus relief under 28 U.S.C. § 1361

Plaintiff requests that this Court enter an order compelling the Defendant and its officers to perform their duty to grant Plaintiff's Application for Naturalization upon finding that all statutory eligibility requirements have been fully satisfied. (Docket No. 1, at 10).

The Mandamus Act provides: "district courts shall have original jurisdiction in the nature of

---

[12]

     In addition, these courts upheld the above regulation barring naturalization while an individual is on probation. *See generally*, *Jiminez*, 153 F. Supp. 2d 1105; *Khiang*, 175 F. Supp. 2d 942.

mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." 28 U.S.C. § 1361. Mandamus can only be granted where a legal duty "is positively commanded and so plainly prescribed as to be free from doubt." *Appalachian States Low-Level Radioactive Waste Com'n v. O'Leary*, 93 F.3d, 103, 112 (3d Cir. 1996). "Mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a governmental official who refuses to act. *Harriott v. Ashcroft*, 277 F. Supp. 2d 538 (E.D. Pa. July 1, 2003) (citing *Donavan v. United States*, 580 F.2d 1203, 1208 (3d Cir. 1978). "In addition, the Supreme Court has required that a party seeking mandamus show that he has 'no other adequate means to attain the relief he desires' and that 'his right to issuance of the writ is clear and indisputable.'" *Id*. (citing *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir. 1996)).

In this Court's estimation, it is clear that Plaintiff has no right to have his naturalization application granted at this time given his conviction of an aggravated felony and his probationary status. Second, as Plaintiff is currently in removal proceedings, he will have an opportunity to pursue the relief he desires in front of an Immigration Judge on August 13, 2008, and, if necessary, obtain direct review of said decision in the Federal Circuit Court of Appeals. 8 U.S.C. § 1252. To that end, adequate remedies exist and support the conclusion that Plaintiff's request for mandamus be denied.

## VII. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment [11] is GRANTED.

---

*/s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

dated:      July 25, 2008
cc/ecf:     All parties of record